## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

_____

|  |  |  |
|---|---|---|
| JAMES CHAMBERLAIN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-00509-PB |
| | ) | |
| ALFRED MONTOYA, MD, | ) | |
| DIRECTOR, MANCHESTER | ) | |
| VA MEDICAL CENTER | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.....................................................................................................................1

BACKGROUND......................................................................................................................2

LEGAL STANDARD...............................................................................................................3

ARGUMENT...........................................................................................................................4

       I.     Plaintiff Lacks Standing to Bring His Establishment
            Clause Claim.....................................................................................4

            A. Plaintiff Fails to Allege a Concrete Injury...................................5

            B. Plaintiff Also Fails to Allege a Particularized Injury................7

      II.    Plaintiff Fails to State a Claim Under the
            Establishment Clause ...................................................................10

CONCLUSION.....................................................................................................................16

## TABLE OF AUTHORITIES

### Cases

*Adams v. Watson*,
    10 F.3d 915 (1st Cir. 1993) ................................................................ 7

*Agostini v. Felton*,
    521 U.S. 203 (1997) ...................................................................... 13

*Allen v. Wright*,
    468 U.S. 737 (1984) ........................................................................ 6

*American Legion v. American Humanist Ass'n*,
    139 S. Ct. 2067 (2019) ............................................................ *passim*

*Americans United for Separation of Church and State v. Reagan*,
    786 F.2d 194 (3d Cir. 1986) ............................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 4, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 4

*Biel v. St. James Sch.*,
    926 F.3d 1238 (9th Cir. 2019) ...................................................... 11

*Books v. City of Elkhart, Ind.*,
    235 F.3d 292 (7th Cir. 2000) ..................................................... 7, 14

*Bowen v. Kendrick*,
    487 U.S. 589 (1988) ................................................................ 13, 14

*Boyajian v. Gatzunis*,
    212 F.3d 1 (1st Cir. 2000) ............................................................ 13

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
    483 U.S. 327 (1987) ...................................................................... 13

*Cty. of Allegheny v. ACLU*,
    492 U.S. 573 (1989) ...................................................................... 10

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ......................................................................................... 4

*Freedom From Religion Found. v. Hanover Sch. Dist.*,
   626 F.3d 1 (1st Cir. 2010) ............................................................................... 12

*Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*,
   493 U.S. 378  (1990) ....................................................................................... 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ......................................................................................... 4

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ......................................................................................... 8

*Kurtz v. Baker*,
   829 F.2d 1133 (D.C. Cir. 1987) ....................................................................... 6

*Lemon v. Kurtzman*,
   403 U.S. 602 (1971) ................................................................................. *passim*

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................. *passim*

*Lynch v. Donnelly*,
   465 U.S. 668 (1984) ..................................................................... 10, 12, 13, 14

*Marsh v. Chambers*,
   463 U.S. 783 (1983) ............................................................................. 10, 11, 12

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
   923 F.3d 209 (1st Cir. 2019) ..................................................................... 5, 7, 8

*Papasan v. Allain*,
   478 U.S. 265 (1986) ......................................................................................... 4

*Raines v. Byrd*,
   521 U.S. 811 (1997) ..................................................................................... 5, 7

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ........................................................................................... 9

*Soto-Torres v. Fraticelli*,
   654 F.3d 153 (1st Cir. 2011) ........................................................................... 14

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................ 5

*Steel Co. v. Citizens for Better Env't*,
  523 U.S. 83 (1998) ..................................................................... 5

*Suhre v. Haywood Cty.*,
  131 F.3d 1083 (4th Cir. 1997) ..................................................... 7

*Town of Greece v. Galloway*,
  134 S. Ct. 1811 (2014) .......................................................... 10, 11

*U.S. Catholic Conference v. Baker*,
  885 F.2d 1020 (2d Cir. 1989) ...................................................... 6

*United States v. AVX Corp.*,
  962 F.2d 108 (1st Cir. 1992) ....................................................... 9

*United States v. Students Challenging Regulatory Agency Procedures ("SCRAP")*,
  412 U.S. 669 (1973) ................................................................... 9

*Valley Forge Christian College v. Americans United for Separation of Church & State*,
  454 U.S. 464 (1982) ............................................................... 4, 6

*Van Orden v. Perry*,
  545 U.S. 677 (2005) ................................................................ 10

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................. 8

*Weisman v. Lee*,
  908 F.2d 1090 (1st Cir. 1995) ............................................... 14, 15

*Zelman v. Simmons-Harris*,
  536 U.S. 639 (2002) ................................................................ 14

## Constitutional Law

U.S. Const. amend. I ................................................................... 10

## INTRODUCTION

This case presents a Plaintiff in search of a controversy.  Off to the side of an entrance to the Manchester VA Medical Center ("MVAMC") stands a table honoring American military prisoners-of-war and those who have gone missing-in-action while serving our country.  That table happens to include, among other things, a Bible as part of its display memorializing the enormous sacrifices some have made for this nation.  Plaintiff, a "devout Christian," does not claim to be personally offended by the inclusion of the Bible in the display.  He is, however, concerned that other, unidentified hospital visitors might be offended.  On that basis alone, Plaintiff has brought this lawsuit to force MVAMC to remove the Bible from the table.

This Court lacks subject-matter jurisdiction over this lawsuit because Plaintiff lacks Article III standing to advance his Establishment Clause claim.  To have standing, Plaintiff must allege a concrete injury—such as direct and unwelcome contact with the display—that affects him in a personal and individual way.  The Complaint lacks allegations sufficient to demonstrate such an injury and, accordingly, this Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1).

Even if this Court has jurisdiction, though, the Complaint should still be dismissed because it fails to state a claim.  Plaintiff relies on the so-called *Lemon* test to plead his Establishment Clause claim.  Compl. ¶ 23, ECF No. 1 (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)).  Yet Plaintiff ignores the perennial decline of the *Lemon* test—illustrated most recently in *American Legion v. American Humanist Ass'n*, 139 S. Ct. 2067 (2019)—in cases such as this involving the passive display of items with religious associations on government property.  In any event, even if *Lemon* applies, the Complaint fails to allege facts allowing a reasonable inference that the Bible display is unconstitutional.

For these reasons, as explained in greater detail below, this Court should dismiss the Complaint for lack of standing or, in the alternative, for failure to state a claim.

## BACKGROUND

Plaintiff is an Air Force veteran who receives medical care at the MVAMC.  Compl. ¶¶ 1, 3.  Although he describes himself as a "devout Christian" with "strong personal religious beliefs," he nonetheless seeks removal of a Christian Bible from a display table in the lobby of the MVAMC.  *Id.* ¶¶ 1, 3, 4, 28(a).  The table, known as the POW/MIA table, is a memorial honoring veterans who have sacrificed their lives as prisoners-of-war or who have gone missing-in-action serving our country.  *Id.* ¶¶ 17, 18.  The table is a "tradition . . . started by a group of Vietnam combat pilots," and displays symbolic items, not always including a Bible.  *See id.* ¶ 18.  In Plaintiff's words, the POW/MIA table "has special meaning to *all* service members and veterans[,]" as its purpose is to "help[] honor the men and women who have sacrificed to protect and serve us all."  *Id.* ¶ 17 (emphasis added).

Plaintiff does not allege that he is personally offended by the display on the POW/MIA table, that the display has in any way injured him, or even that he has to confront the display—which is "located off to [the] side" of the MVAMC lobby.  *Id.* ¶ 4.  Instead, Plaintiff appears to express concern for unidentified "military brothers and sisters[,]" toward whom he "does not want to be exclusionary by the placement of the Christian Bible."  *Id.* ¶ 3.  In that regard, Plaintiff asserts his "belief[s] that the Christian Bible has no place being displayed on the POW/MIA table at the entrance way to the MVAMC, where [Plaintiff] gets his care."  *Id.*

According to Plaintiff, earlier this year, MVAMC agreed to remove the Bible from the POW/MIA table after receiving complaints from the Military Religious Freedom Foundation ("MRFF").  *Id.* ¶¶ 4, 12-13.  MRFF—which is not a party in this litigation and does not represent

Plaintiff as counsel of record—is an organization that advocates for "protecting the separation of church and state in the United States military and the Veterans Administration." *Id.* ¶ 5. Plaintiff alleges that MRFF contacted MVAMC on behalf of fourteen unnamed veterans—but not Plaintiff—who objected to the Bible display but who feared reprisal if they complained directly to MVAMC. *Id.* ¶¶ 4, 9-12. None of those fourteen unnamed veterans are parties to this lawsuit, and Plaintiff does not supply any allegations as to how he has knowledge of MRFF's activities.

The Complaint further alleges that, approximately three weeks after the Bible was removed, it was returned to the POW/MIA table, this time in a locked plexiglass box. *Id.* ¶ 14. MRFF again complained to MVAMC. *Id.* ¶ 15. At that point, Plaintiff "came forward and was willing to publicly prosecute this action[.]" *Id.* ¶ 16.

Plaintiff contends that the display of the Bible on the POW/MIA table violates the Establishment Clause of the First Amendment to the United States Constitution. *Id.* ¶¶ 20-21. Citing *Lemon*, Plaintiff argues that MVAMC has "put[] forth the Christian beliefs of some, at the expense of the beliefs of non-Christians." *Id.* ¶ 23. The Complaint requests a preliminary[1] and permanent injunction requiring MVAMC to remove the Bible from the POW/MIA table. *Id.* ¶ 28(a)-(b).

## LEGAL STANDARD

Defendant moves to dismiss the Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The complaining party has the burden of establishing the predicates to subject-matter jurisdiction, including standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Indeed, it is "presume[d] that federal courts lack jurisdiction unless the

---

[1] Although Plaintiff requests a preliminary injunction in his Complaint, Compl. ¶ 28(a), he has not moved separately for one.

contrary appears affirmatively from the record[.]"  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted).  In ruling on a Rule 12(b)(1) motion, the district court "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

Defendant also moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.  To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "facial plausibility" standard is satisfied when the "factual content" in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Although courts assume that the complaint's allegations are true, the plaintiff is not excused from his "obligation to provide the 'grounds' of his 'entitle[ment] to relief.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    Plaintiff Lacks Standing to Bring His Establishment Clause Claim.

The "judicial power of the United States defined by Art[icle] III is not an unconditioned authority to determine the constitutionality of legislative or executive acts[,]" but is limited to the resolution of actual "cases" and "controversies."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan*, 504 U.S. at 560.

- 4 -

A plaintiff seeking to invoke federal jurisdiction must establish all three elements of the "irreducible constitutional minimum of standing[.]" *Id.* Specifically, the plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Moreover, because Article III standing is jurisdictional, federal courts must determine whether a plaintiff has standing before proceeding to the merits of any case. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 95-96 (1998). And while the Supreme Court has always demanded "strict compliance" with standing requirements, it has cautioned that the "standing inquiry has been especially rigorous" where, as here, "reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

Plaintiff appears to believe that, although he himself is not injured by the Bible displayed on the POW/MIA table, he nonetheless has standing to seek removal of the Bible because (1) he believes that the Constitution prohibits the Bible display, and (2) he "does not want to be exclusionary" towards other MVAMC visitors. Compl. ¶ 3. As explained below, these allegations fail to identify a "concrete and particularized" injury sufficient to confer Article III standing on Plaintiff. *Lujan*, 504 U.S. at 560.

### A.    Plaintiff Fails to Allege a Concrete Injury.

The law requires Plaintiff to demonstrate a "concrete and particularized injury that is actual or imminent, not speculative or hypothetical." *Id.* "Concreteness requires something 'real, and not abstract.'" *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 227 (1st Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1548). An injury is not "concrete" if it is predicated merely

"on the right, possessed by every citizen, to require that the Government be administered according to law." *See Valley Forge*, 454 U.S. at 482-83 (citation omitted); *see also Allen v. Wright*, 468 U.S. 737, 754-55 (1984) (same). Indeed, the Supreme Court has repeatedly found allegations of "the abstract injury in nonobservance of the Constitution" insufficient to satisfy the injury-in-fact requirement for Article III standing. *See Valley Forge*, 454 U.S. at 482-83 (citing cases).

Plaintiff's perceived injury is rooted solely in his desire for MVAMC to act in accordance with what Plaintiff believes the Constitution requires. To that end, the Complaint merely paraphrases the Establishment Clause and states, "[Plaintiff] believes that the Christian Bible has no place being displayed on the POW/MIA table" and should therefore be removed so that Plaintiff is not "exclusionary" towards other unnamed individuals. Compl. ¶ 3. This is not a concrete injury. At most, it is a "psychological consequence presumably produced by observation of conduct with which one disagrees" and, as such, does not confer Article III standing, "even though the disagreement is phrased in constitutional terms." *Valley Forge*, 454 U.S. at 485-86; *see also Kurtz v. Baker*, 829 F.2d 1133, 1141 (D.C. Cir. 1987) ("[A]llegations of stigmatic injury will not suffice to link a plaintiff personally to the conduct he challenges unless . . . the plaintiff personally has been denied a benefit[.]"); *In re Catholic Conference*, 885 F.2d 1020, 1024-25 (2d Cir. 1989) (pro-choice clergy lacked standing to challenge Catholic Church's tax-exempt status based on alleged stigma arising from "government favoritism to a different theology"); *Ams. United for Separation of Church & State v. Reagan*, 786 F.2d 194, 201 (3d Cir. 1986) (religious groups lacked standing to challenge adoption of diplomatic relations with the Vatican based on suggestion that such relations would cast their religious views in an adverse light in the religious market).

**B.      Plaintiff Also Fails to Allege a Particularized Injury.**

Even if this Court somehow finds that Plaintiff has sufficiently alleged a concrete injury, Plaintiff still lacks standing because his Complaint fails to allege that any such injury is particularized as to Plaintiff.  *See Lujan*, 504 U.S. at 560 (Article III requires a "concrete *and particularized*" injury) (emphasis added).  "A sufficiently particularized injury 'affect[s] the plaintiff in a personal and individual way.'"  *Massachusetts*, 923 F.3d at 227 (quoting *Lujan*, 504 U.S. at 560 n.1).  Thus, a plaintiff bringing an Establishment Clause claim must show that he "has a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to him."  *Raines*, 521 U.S. at 819; *see also Adams v. Watson*, 10 F.3d 915, 918 (1st Cir. 1993) ("The injury-in-fact inquiry serves to distinguish a person with a direct stake in the outcome of [the] litigation . . . from a person with a mere interest in the problem." (citation omitted)).  Plaintiff cannot make that showing here.

At best, Plaintiff's allegations express his general concern for "all his military brothers and sisters" who purportedly feel "exclu[ded] by the placement of the Christian Bible."  Compl. ¶ 3. This is insufficient to confer standing on Plaintiff for two key reasons.

First, cases involving the display of religious objects emphasize direct and unwelcome contact with such objects in determining injury-in-fact.  *See, e.g.*, *Books v. City of Elkhart*, 235 F.3d 292, 301 (7th Cir. 2000) ("[A] plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located."); *Suhre v. Haywood Cty.*, 131 F.3d 1083, 1086 (4th Cir. 1997) ("The injury that gives standing to plaintiffs in [religious display] cases is that caused by unwelcome direct contact with a religious display that appears to be endorsed by the state.").  *C.f. American Legion*, 139 S. Ct. at 2098-2100 (Gorsuch, J., concurring in the judgment)

(criticizing the "offended observer" theory of standing).  Here, Plaintiff fails to allege any facts

demonstrating direct and unwelcome contact with the Bible.  In fact, Plaintiff does not even claim

to be personally offended by the Bible.  To the contrary, he describes himself as "a devout Christian"

with "strong personal religious beliefs," and acknowledges that the Bible actually advances his own

religion.  Compl. ¶¶ 3, 24.  Plaintiff thus does not allege an injury that affects him "in a personal

and individual way."  *Massachusetts*, 923 F.3d at 227.

Second, by failing to allege that Plaintiff is personally affected by the Bible and instead

focusing on the purported feelings of other veterans, the Complaint collides with the longstanding

rule "that a party 'generally must assert his own legal rights and interests, and cannot rest his claim

to relief on the legal rights or interests of third parties.'"  *Kowalski v. Tesmer*, 543 U.S. 125, 129

(2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Although this rule is not absolute, *see

id.* at 129-30, there is no indication from the Complaint that Plaintiff qualifies to litigate on behalf

of unidentified third parties.[2]  Allowing Plaintiff to bring this suit on behalf of "all his military

brothers and sisters" who may (or may not) object to the Bible, when Plaintiff himself is not

adversely impacted by the Bible, would eradicate the limitations on third-party standing.

Plaintiff cannot salvage his own lack of standing by referring to the MRFF or the fourteen

unnamed veterans who allegedly complained to MRFF about the Bible.  Compl. ¶¶ 4, 7-9.  None

of the fourteen unnamed veterans are parties to this case.  And there are no allegations that MRFF—

which is also not a party to this case—has itself been injured as an organization or otherwise would

have standing to challenge the Bible as an association on behalf of the veteran-complainants.  Thus,

---

[2]A party seeking third-party standing must show that he "has a close relationship" with the third party and that there is a "hindrance to the third party's ability to protect his . . . own interests." *Kowalski*, 543 U.S. at 130, 136.  Additionally, third-party standing may be allowed where "enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights."  *Id.* at 130.

the Complaint's summary of MRFF's purpose and activities, and its discussion of the other veterans, are irrelevant.  Compl. ¶¶ 4-10; *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) ("[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III.").

Plaintiff's lack of standing is not surprising.  In Plaintiff's own words, the Bible sits "in a locked plexiglass box on the POW/MIA table[,]" which is located "off to one side in the entrance lobby" of the MVAMC.  Compl. ¶¶ 4, 14.  There is no allegation—nor could there be—that the Bible's presence compels Plaintiff (or anybody else) to engage in any religious observance.  *See American Legion*, 139 S. Ct. at 2093 (2019) (Kavanaugh, J., concurring) ("The practice of displaying religious memorials, particularly religious war memorials, on public land is not coercive[.]").  Indeed, the Bible has literally no functional use in this display, as it is locked under plexiglass.  Thus, the POW/MIA table merely presents an opportunity for individuals who are so inclined to see the Bible, or any of the other items on display.  And while Plaintiff claims an interest in seeing the Bible removed in his capacity as a bystander concerned for other veterans' feelings, "[a] mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury."  *United States v. AVX Corp.*, 962 F.2d 108, 114 (1st Cir. 1992); *see also United States v. Students Challenging Regulatory Agency Procedures ("SCRAP")*, 412 U.S. 669, 687 (1973) ("[T]he party seeking review [must] be himself among the injured, for it is this requirement that gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders.").

Plaintiff's failure to allege a cognizable injury-in-fact is fatal to this Court's jurisdiction. *Lujan*, 504 U.S. at 560.  The Complaint should therefore be dismissed under Rule 12(b)(1), and the Court should decline to reach the merits of the Establishment Clause claim.

**II.     Plaintiff Fails to State a Claim Under the Establishment Clause.**

Assuming Plaintiff has Article III standing, the Complaint should nonetheless be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The Establishment Clause of the First Amendment provides in pertinent part that "Congress shall make no law respecting an establishment of religion[.]"  U.S. Const. amend. I.  In construing the Establishment Clause, the Supreme Court has repeatedly emphasized that the constitutionality of government action must be viewed in the context in which that action arises.  *See Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) ("The Court's interpretation of the Establishment Clause has comported with what history reveals was the contemporaneous understanding of its guarantees."); *Town of Greece v. Galloway*, 572 U.S. 565, 566 (2014) ("[T]he Establishment Clause must be interpreted 'by reference to historical practices and understandings.'" (quoting *Cty. of Allegheny v. ACLU*, 492 U.S. 573, 670 (1989)).  The Court has thus looked to "historical evidence" to determine both the meaning and applicability of the Establishment Clause as it relates to a given practice. *Marsh v. Chambers*, 463 U.S. 783, 790 (1983) ("[H]istorical evidence sheds light not only on what the draftsmen intended the Establishment Clause to mean, but also on how they thought that Clause applied to [a particular] practice . . . .").

In support of his Establishment Clause claim, Plaintiff reliefs on the three-part test set forth in *Lemon*, 403 U.S. at 612-13.  The Supreme Court, however, has repeatedly cast considerable doubt on *Lemon* as a viable legal standard, most recently in *American Legion*, 139 S. Ct. at 2080 ("If the *Lemon* Court thought that its test would provide a framework for all future Establishment

- 10 -

Clause decisions, its expectation has not been met." (plurality opinion)).  *See also Van Orden v. Perry*, 545 U.S. 677, 686 (2005) (expressly declining to apply *Lemon* in reviewing the constitutionality of a monument inscribed with the Ten Commandments displayed on state grounds); *Biel v. St. James Sch.*, 926 F.3d 1238, 1250 n.8 (9th Cir. 2019) (stating that *American Legion* calls into question "the continuing value of the legal test in *Lemon*").

*American Legion* involved a challenge to the Bladensburg Peace Cross, which honored 49 soldiers who sacrificed their lives in World War I.  139 S. Ct. at 2074.  The plurality agreed that "the *Lemon* test presents particularly daunting problems in cases . . . that involve the use, for ceremonial, celebratory, or commemorative purposes, of words or symbols with religious associations" and determined that courts should replace *Lemon* with "a presumption of constitutionality for longstanding monuments, symbols, and practices."  *American Legion*, 139 S. Ct. at 2081-82 (plurality opinion).[3]  In that regard, courts should take "a more modest approach that focuses on the particular issue at hand and looks to history for guidance[,]" as the Court did in *Marsh*, 463 U.S. at 783, and more recently in *Town of Greece*, 572 U.S. at 577.  *American Legion*, 139 S. Ct. at 2087 (plurality opinion); *see also id.* at 2092 (Kavanaugh, J., concurring) ("Consistent with the Court's case law, the Court today applies a history and tradition test in examining and upholding the constitutionality of the Bladensburg Cross.").  Under this approach, although a practice may be "by definition religious," it may nonetheless pass constitutional muster when

---

[3] Writing separately, three individual Justices voted to eliminate *Lemon* in its entirety, or else in circumstances beyond passive display cases.  *See American Legion*, 139 S. Ct. at 2092-93 (Kavanaugh, J., concurring) (identifying five categories of Establishment Clause cases to which *Lemon* does not apply); *id.* at 2097 (Thomas, J., concurring in the judgment) ("I would take the next logical step and overrule the *Lemon* test in all contexts."); *id.* at 2101 & 2102 (Gorsuch, J., concurring in the judgment) (describing Lemon as a "misadventure" that is "now shelved").

interpreted "by reference to historical practices and understandings." *American Legion*, 139 S. Ct. at 2087 (plurality opinion) (quoting *Marsh*, 463 U.S. at 576).

The challenged display here is entitled to *American Legion*'s "presumption of constitutionality." *See id.* at 2081, 2082 (plurality opinion).  As the Complaint concedes, the POW/MIA table is part of a longstanding tradition created by a group of Vietnam combat pilots; as such, it has "special meaning" and "helps honor the men and women who have sacrificed to protect and serve us all."  Compl. ¶ 17.  *Cf. American Legion*, 139 S. Ct. at 2074 ("For nearly a century, the Bladensburg Cross has expressed the community's grief at the loss of the young men who perished, its thanks for their sacrifice, and its dedication to the ideals for which they fought.").  To be sure, the table at MVAMC includes a Bible, but as Plaintiff points out, POW/MIA tables display various items that are intended to memorialize "all who have served regardless of their beliefs or faith traditions."  Compl. ¶ 18.  And, although the Bible clearly has religious associations, "[t]he Supreme Court has upheld a wide variety of governmental actions that have some religious content."  *Freedom From Religion Found. v. Hanover Sch. Dist.*, 626 F.3d 1, 8 (1st Cir. 2010).  It would thus be plain error to "focus almost exclusively on the . . . religious nature" of one item in an otherwise secular display.  *Lynch*, 465 U.S. at 680-81.  That, however, is precisely what Plaintiffs would have this Court do when they allege that the inclusion of a single Bible in an otherwise secular display is *per se* unconstitutional under the Establishment Clause.  *See* Compl. ¶¶ 20-21.  Because Plaintiff's legal theory is inconsistent with the litany of Supreme Court precedent eroding *Lemon*, and specifically with *American Legion*'s presumption of constitutionality, this lawsuit should be dismissed.

Alternatively, and even if this Court were to apply the *Lemon* test, Plaintiff still fails to state a claim.  Pursuant to *Lemon*, in order to survive an Establishment Clause claim, the challenged

government practice must:  (1) have a "secular legislative purpose[,]" (2) have a "principal or primary effect . . . that neither advances nor inhibits religion," and (3) not result in "excessive government entanglement with religion."  403 U.S. at 612-13 (citation omitted).  The Complaint lacks facts plausibly alleging that the Bible display violates any one of these requirements.

As to the first element, a government practice has an unconstitutional purpose if "the government acted with the purpose of advancing or inhibiting religion[.]"  *Agostini v. Felton*, 521 U.S. 203, 222-23 (1997); *see also Bowen v. Kendrick*, 487 U.S. 589, 602 (1988) (a statute passes the "secular purpose" test unless it is "*motivated wholly* by an impermissible purpose" (emphasis added)); *Lynch*, 465 U.S. at 680 ("The Court has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated wholly by religious considerations.").  "This does not mean that the law's purpose must be unrelated to religion—that would amount to a requirement 'that the government show a callous indifference to religious groups.'"  *Boyajian v. Gatzunis*, 212 F.3d 1, 5 (1st Cir. 2000) (quoting *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 335 (1987)).  Rather, the boundary is one of "benevolent neutrality, in which religious exercise is supported but not promoted."  *Id*. (quoting *Amos*, 483 U.S. at 334).

Plaintiff fails to allege a single fact showing that the purpose of the Bible on the POW/MIA table is to advance religion.  As noted above, Plaintiff acknowledges the secular purpose of honoring fallen, missing, and imprisoned military service members through the POW/MIA table.  *See* Compl. ¶ 17.  Plaintiff further concedes that the table's purpose is accomplished by displaying several items—not just a Bible—that together memorialize "all who have served regardless of their beliefs or faith traditions."  *Id.* ¶ 18.  Yet Plaintiff does not—and cannot—explain how adding a

Bible to the table at MVAMC transforms the display's secular purpose into one "*motivated wholly by an impermissible purpose[.]*"  *See Bowen*, 487 U.S. at 602 (emphasis added); *Lynch*, 465 U.S. at 680-81 (finding plain error in the district court's "focusing almost exclusively on the . . . religious nature" of one item in an otherwise secular display).

With respect to the second *Lemon* prong—the so-called "endorsement" test—the question is whether the government practice "appears to endorse religion in the eyes of a reasonable observer who must be deemed aware of the history and context underlying a challenged program." *Zelman v. Simmons-Harris*, 536 U.S. 639, 655 (2002).  "What is crucial is that a government practice not have the effect of communicating a message of government endorsement or disapproval of religion." *Weisman v. Lee*, 908 F.2d 1090, 1095 (1st Cir. 1990) (quoting *Lynch*, 465 U.S. at 692).

Plaintiff appears to argue that the Bible display unlawfully endorses religion because it allegedly "puts forth the Christian beliefs of some, at the expense of the beliefs of non-Christians." Compl. ¶ 24.  But this is not a well-pleaded fact; it is a legal conclusion as to the principal effect of the Bible display and thus should be disregarded.  *See Soto-Torres v. Fraticelli*, 654 F.3d 153, 156 (1st Cir. 2011).  As mentioned above, the Bible is merely one item among others meant to honor fallen, imprisoned, and missing military service members.  *See* Compl. ¶¶ 17-18.  And, although the Bible itself is a religious item, the Complaint offers no facts supporting an inference that a "reasonable observer" who is aware of the "history and context" of the POW/MIA table tradition at large, would find an endorsement of religion merely because a Bible is included on the table at MVAMC.  *See Books v. City of Elkhart*, 235 F.3d 292, 304 (7th Cir. 2000) ("When employing [the second *Lemon* prong], we are charged with the responsibility of assessing the totality of the circumstances surrounding the display to determine whether a reasonable person would believe that the display amounts to an endorsement of religion.").

- 14 -

The final *Lemon* prong prohibits "excessive government entanglement with religion." 403 U.S. at 627. This rule is primarily "concerned with the state impermissibly monitoring or overseeing religious affairs[,]" *Weisman*, 908 F.2d at 1095, characterized by "comprehensive, discriminating, and continuing state surveillance" of religious exercise, *Lemon*, 403 U.S. at 619. "Implicit in this prong, and central to any understanding of the First Amendment, is the belief that the government should not become involved with the determination of religious practice." *Weisman*, 908 F.2d at 1095.

As with the first two *Lemon* prongs, the Complaint is entirely devoid of facts supporting an inference that MVAMC is impermissibly entangled with religion because of the Bible displayed on the POW/MIA table. Plaintiff does not, for instance, allege facts as to the nature of MVAMC's involvement with the POW/MIA table, such as facts pointing to any maintenance or control that MVAMC exercises over the display, or financial support or other aid that MVAMC provides for the display. *See Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 398, 393 (1990) ("The 'excessive entanglement' prong . . . requires examination of the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." (citation omitted)). Rather, as stated above, the Complaint acknowledges that the POW/MIA table tradition is secular, and does not explain how the Bible on the table at MVAMC converts the table into a predominantly religious display with which MVAMC could become entangled. *See supra* pp. 13-14; Compl. ¶¶ 17-18.

Plaintiff's attempt to plead his case amounts to no more than recitals of the Establishment Clause and *Lemon* test, followed by summary conclusions that MVAMC has acted unlawfully. *See* Compl. ¶¶ 20, 21, 23, 24. These are precisely the allegations that, by definition, fail to state a

claim under Rule 12(b)(6).  *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Complaint should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Dated: July 22, 2019                                      Respectfully submitted,

                                                          JOSEPH H. HUNT
                                                          Assistant Attorney General

                                                          JAMES M. BURNHAM
                                                          Deputy Assistant Attorney General

                                                          BRAD P. ROSENBERG
                                                          Assistant Branch Director

                                                          */s/ Cristen C. Handley*
                                                          CRISTEN C. HANDLEY (MO Bar 69114)
                                                          Trial Attorney, Federal Programs Branch
                                                          U.S. Department of Justice, Civil Division
                                                          1100 L Street NW
                                                          Washington, DC 20005
                                                          Tel: (202) 305-2677
                                                          Fax: (202) 616-8460

                                                          *Counsel for Defendant*