UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JAMES CHAMBERLAIN,          \*
                                          \*
          Plaintiff,          \*
                                          \*
v.                            \*      Civil Action No. 1:19-cv-00509-PB
                                          \*
                                          \*
ALFRED MONTOYA, MD,      \*
DIRECTOR, MANCHESTER     \*
VA MEDICIAL CENTER,       \*
                                          \*
          Defendant.      \*

## OBJECTION TO DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

Under the United States Constitution our government is one of limited powers, and religion is one of the subjects that the government is proscribed from promoting or endorsing. Government displays that endorse religion are subject to judicial review when persons are exposed to unwanted displays. Here, the plaintiff has had unwanted exposure to the disputed bible placed at the entrance of the Manchester VA Medical Center. That is sufficient for standing.

Additionally, plaintiff's complaint contains sufficient factual allegations for a reasonable court to infer that defendant is responsible for the misconduct alleged. This Court need not now decide which of the many Establishment Clause tests to apply. Regardless of the test applied, Establishment Clause cases are fact-sensitive

inquiries, and further facts, including the history and context of the bible, and the

purpose of the government in placing the bible, must be developed in discovery.

## LEGAL STANDARDS

On a motion to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction, "[t]he party invoking federal court jurisdiction bears the burden of

proving its existence." *Pejepscot Indus. Park v. Maine Cent. Railroad Co.,* 215 F.3d

195, 200 (1st Cir. 2000). In order to adjudicate a Rule 12(b)(1) motion, this Court

must first look to the nature of the movant's challenge. *Valentin v. Hosp. Bella*

*Vista,* 254 F.3d 358, 363 (1st Cir. 2001). If the challenge goes to the accuracy of the

jurisdictional facts asserted by the plaintiff, it is this Court's obligation to engage in

fact-finding to "address the merits of the jurisdictional claim by resolving the

factual disputes between the parties." *Id*. However, when the challenge goes to the

sufficiency of the jurisdictional allegations in a complaint (questioning not the facts

themselves, but rather whether they establish a basis for federal jurisdiction), as in

defendant's motion to dismiss, this Court must credit the pleaded factual

allegations as true and draw all reasonable inferences from them in the nonmoving

party's favor. *Id.* Therefore, plaintiff here must allege facts demonstrating standing;

and this Court then must construe those facts and reasonable inferences drawn

from them in plaintiff's favor. *Id.* See also *Nulankeyutmonen Nkihtaqmikon v.*

*Impson,* 503 F.3d 18, 25 (1st Cir. 2007). The plaintiff has done so here.

Defendant also moves to dismiss the Complaint under FRCP 12(b)(6) for

failure to state a claim.  To withstand a Rule 12(b)(6) motion, "a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, plaintiff has articulated a claim under the Establishment Clause for which the MVAMC and defendant Montoya are responsible.

## ARGUMENT

### I.     Plaintiff Has Standing To Bring This Claim

Plaintiff's Complaint contains sufficient factual allegations of standing. To have standing, the petitioner must prove to this Court that the petitioner has: (1) personally suffered or will imminently suffer an injury in fact, (2) which is fairly traceable to or caused by the defendants conduct, and (3) is likely to be redressed by a favorable court decision. *Nulankeyutmonen,* 503 F.3d at 26 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61). Here, plaintiff has alleged that he personally suffered. He identified himself as the "fifteenth complainant," finds the placement of the bible "objectionable," and "does not want to be exclusionary by the placement of the Christian Bible." Compl. ¶¶ 3, 16, 19. Plaintiff has alleged that "MVAMC leadership," including defendant Montoya, initially removed the bible from the entrance to the MVAMC, and thereafter replaced it. Compl. ¶¶ 12-15. Finally, plaintiff's injury can be redressed by a favorable court decision. Plaintiff has requested this Court to "[i]ssue a preliminary injunction requiring the removal of the Christian Bible from the POW/MIA table at the MVAMC" and "[i]ssue a

permanent injunction requiring the removal of said Bible." Compl. ¶ 28. Unless this

Court grants the relief requested in plaintiff's Complaint, he will continue to suffer

harm. Therefore, plaintiff has standing.

The gist of defendant's argument, made pursuant to FRCP 12(b)(1), is that

plaintiff does not have standing to seek injunctive relief under the Establishment

Clause because he is a "devout Christian with strong personal religious beliefs, and

acknowledges that the bible actually advances his religion." Def. MTD, pg. 8.

Therefore, defendant assumes that plaintiff, a Christian Air Force Veteran who

frequents the Manchester VA Medical Center ("MVAMC"), cannot suffer a

particularized injury from the government's display of a bible at the MVAMC by

virtue of being Christian. This is a striking claim with far-reaching implications.

Rejecting plaintiff James Chamberlain's standing to bring a claim necessarily

implies that the Supreme Court has been getting these cases wrong for generations,

since it has been deciding religious display cases on their merits for decades. The

Supreme Court addressed the constitutionality of state-sponsored Ten

Commandments displays in *McCreary County v. ACLU of Kentucky,* 545 U.S. 844

(2005), *Van Orden v. Perry,* 545 U.S. 677 (2005), and *Stone v. Graham,* 449 U.S. 39

(1980). It addressed the constitutionality of state-sponsored holiday displays in

*County of Allegheny v. ACLU,* 492 U.S. 573 (1989), and *Lynch v. Donnelly*, 465 U.S.

668 (1984). It also addressed the constitutionality of state-sponsored town board

meetings that open with prayer in *Town of Greece v. Galloway,* 572 U.S. 565 (2014),

4

and *Marsh v. Chambers,* 463 U.S. 783 (1983). None of these cases was decided on standing grounds. All of them were decided on their merits.

Additionally, in the cases where the plaintiff was not an organization—*Van Orden, Stone, Lynch, Town of Greece,* and *Marsh*—the plaintiff's respective religious beliefs did not tilt the Court's analysis one way or the other. In *Van Orden,* the Court referred to petitioner as a "resident of Austin…having graduated from Southern Methodist Law School…[who] has encountered the Ten Commandments monument during his frequent visits to the Capital grounds." *Perry,* 545 U.S. at 682. The Court did not find that Van Orden lacked standing because he was Methodist, and therefore the Ten Commandments "advanced" his religion. In fact, the Court did not even discuss Van Orden's religious beliefs, if any.[1]

So too in *Lynch v. Donnelly*, plaintiffs Daniel Donnelly *et al.* were Pawtucket residents challenging the display of a nativity scene in Pawtucket's shopping district. *Donnelly*, 465 U.S. at 671. After pointing this out, the Court proceeded to discuss the merits of the case. Daniel Donnelly's religious beliefs were of no consequence to the Court's analysis. Just like the plaintiffs in *Van Orden* and *Lynch,* plaintiff James Chamberlain is a veteran who receives his medical treatment at the MVAMC, and therefore frequently encounters the bible at the MVAMC. Compl. ¶ 16.

---

[1] Thomas Van Orden described himself as a "religious pluralist" at the time of the lawsuit, but attended a Methodist church. Moreno, Sylvia (02/21/2005). "Supreme Court on a Shoestring." *The Washington Post.*

In *Marsh,* plaintiff had standing to challenge praying during legislative sessions because he was a member of the legislature and a taxpayer. Again, in *Town of Greece,* the Court simply stated that plaintiffs "Susan Galloway and Linda Stephens attended town board meetings to speak about issues of local concern, and objected that the prayers violated their religious or philosophical views." *Town of Greece,* 572 U.S. at 572. Again, the Court did not discuss whether Susan Galloway and Linda Stephens lacked standing. These plaintiffs sought to prevent the government from associating with any one faith or belief because it "violated their religious or philosophical views," just as plaintiff James Chamberlain seeks to remove the bible from the entrance of the MVAMC because it "puts forth the Christian beliefs of some, at the expense of the beliefs of non-Christians." Compl. ¶ 23.

Plaintiff James Chamberlain is a congregant at the First Congregational Church, Compl. ¶ 1. As alleged in the complaint, plaintiff James Chamberlain is a "Christian" who "respects and loves all his military brothers and sisters and does not want to be exclusionary by the placement of the Christian Bible." Compl. ¶ 3. This is plaintiff James Chamberlain's religious view of Christianity, and philosophical view of the world. Therefore, in crediting the pleaded factual allegations as true and drawing all reasonable inferences from them in plaintiff's favor, this Court should conclude that by privileging the beliefs of some at the expense of others, MVAMC has violated plaintiff James Chamberlain's religion and philosophy.

What is even more notable is that in *Stone,* the plaintiffs did not even directly encounter the religious display they were challenging. The plaintiffs in *Stone* were a group of parents who challenged a Kentucky law requiring all public schools to post the Ten Commandments in the classroom. *Graham,* 449 U.S. at 40. The Court assumed that the plaintiffs in *Stone* had standing, simply by virtue of the fact that their children attended Kentucky Public Schools. Again, the Court did not discuss the plaintiffs' religious beliefs, if any, before deciding the case on its merits.[2]

Additionally, there is a Supreme Court case that directly addressed the issue of Establishment Clause standing, which the defendant has overlooked. In *Lee v. Weisman,* 505 U.S. 577 (1992), the Court addressed the constitutionality of government-sponsored prayers at public school graduations. But the Court also addressed standing:

> We find it unnecessary to address Daniel Weisman's taxpayer
> standing, for a live and justiciable controversy is before us. Deborah
> Weisman is enrolled as a student at Classical High School in
> Providence and from the record it appears likely, if not certain, that an
> invocation and benediction will be conducted at her high school
> graduation.

*Id.* at 584.

This passage is short and simple. Deborah Weisman is a public-school student; prayers will be conducted at her graduation; she will come into contact with those prayers; therefore she has standing to challenge them. Nowhere does the Court suggest that Weisman's standing arises out of her being non-Christian, or

---

[2] However, quick research on Sydell Stone suggests he was a Christian. See
https://www.mylife.com/sydell-stone/e798702222036.

forced to pray. Instead what gives her standing is the mere fact that she is subject to hearing the prayers, just as plaintiff James Chamberlain is subject to viewing the religious display every time he enters the MVAMC. In *Lee,* all nine Justices seem to be in agreement on this point, including the four dissenters, who emphasized that Weisman would not be forced to pray, without ever questioning her standing to sue.

The Court treated standing (and therefore the concrete and particularized injury element of standing) as sufficient in all of these cases, even though the only thing  affected were the philosophical, religious, or irreligious sentiments of plaintiffs. In fact, plaintiff has not found a Supreme Court case that dismissed a claim under the Establishment Clause involving religious displays on standing grounds. Plaintiff has Article III standing and plaintiff's complaint should not be dismissed under 12(b)(1).

## II.    Plaintiff Alleges Sufficient Facts To Articulate A Claim Under The Establishment Clause

Defendant's second argument, made pursuant to FRCP 12(b)(6), is premature. Under the Establishment Clause, several tests frame contemporary jurisprudence, and this Court does not now need to decide which test is proper for this case. Indeed, the Supreme Court has described its jurisprudence regarding the Establishment Clause as "Januslike" insofar as they "point in two directions." *Van Orden,* 545 U.S. at 683. Still, the test outlined by the Supreme Court in *Lemon v. Kurtzman* has long been a major tool for determining whether state action violates the Establishment Clause. Although controversial, and rejected by individual members of the Supreme Court in various cases, the *Lemon* test lives on as the

8

regnant standard in Establishment Clause decisions by the Court, by the First Circuit, and in literally thousands of cases adjudicated in the lower courts.[3]

The most recent Establishment Clause Supreme Court case, *American Legion v. American Humanist Association,* did not overrule the test laid out in *Lemon v. Kurtzman.* As its "Januslike" jurisprudence would suggest, the Supreme Court pointed out the *Lemon* test's shortcomings, and enumerated the "particularly daunting problems in cases . . . that involve the use, for ceremonial, celebratory, or commemorative purposes, of words or symbols with religious associations." *American Legion v. American Humanist Association,* --- U.S. ---, 139 S. Ct. 2067, 2081 (2019). Specifically, the Court decided the *Lemon* test was not the appropriate vehicle for evaluating cases involving "**longstanding** monuments, symbols, and practices." *Id.* at 2082 (emphasis added).

At this time, without discovery, this Court should not resolve the Establishment Clause claim on a motion for judgment on the pleadings. Further discovery is necessary to determine the history and context of the community and forum in which the bible appears. For example, in discovery plaintiff will learn the purpose of the placement of the bible, and the timeline of events leading up to its placement, its removal, and its subsequent placement. Additionally, further

---

[3] See, e.g., *Freedom From Religion Foundation v. Hanover Sch. Dist.,* 665 F.Supp.2d 58 (D.N.H. 2009); *Bader v. Wren,* 532 F.Supp.2d 308 (D.N.H. 2008); *Barense v. Town of Barrington,* 955 F.Supp. 151 (D.N.H. 1996). See also *Marrero–Méndez v. Calixto–Rodríguez,* 830 F.3d 38 (1st Cir. 2016); *Freedom From Religion Foundation v. Hanover School Dist.,* 626 F.3d 1 (1st Cir. 2010); *Catholic League for Religious and Civil Rights v. City and Cty. of San Francisco,* 624 F.3d 1043 (9th Cir. 2010); *ACLU of Kentucky v. Grayson Cty.,* 591 F.3d 837 (6th Cir. 2010); *Milwaukee Deputy Sheriffs' Ass'n v. Clarke,* 588 F.3d 523 (7th Cir. 2009); *Cooper v. U.S. Postal Serv.,* 577 F.3d 479 (2d Cir. 2009).

discovery is necessary to determine the relationship between the MVAMC and the individual(s) who might have donated the bible to the MVAMC, Herman "Herk" Streitburger, World War II Veteran, and Paul Martin of the Northeast POW-MIA network.

As an analysis of any Establishment Clause claim is a fact-sensitive one, the current record does not contain sufficient information about the history of the bible at the MVAMC, and the primary effect of the bible on the members of the MVAMC, to determine the sufficiency of the Establishment Claim. Drawing the facts in the light most favorable to the non-moving party, plaintiff has articulated sufficient facts for this Court to conclude that a reasonable observer in plaintiff's position could view the placement of the bible on government property as an endorsement of religion.

## CONCLUSION

For the above reasons, this Court should deny defendant's motion to dismiss, or, in the alternative, allow plaintiff to amend the complaint to include facts fleshing out plaintiff's standing and facts alleging that placement of the bible at the MVAMC is neither a "longstanding monument" nor a commonplace historical practice.

JAMES CHAMBERLAIN

By his attorney,

NIXON, VOGELMAN, SLAWSKY &
      SIMONEAU, PA


Dated:  August 14, 2019         /s/Lawrence A. Vogelman
                                   Lawrence A. Vogelman (NH Bar #10280)
                                   77 Central Street
                                   Manchester, NH 03101
                                   Phone:  603-669-7070
                                   Email:  LVogelman@davenixonlaw.com

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing objection has been forwarded via ECF to Cristen Handley, counsel for the defendant.

                                   /s/Lawrence A. Vogelman
                                   Lawrence A. Vogelman